THE JOSEPH STICKNEY.

THE HARRY WHITE.

LOWELL v. THE JOSEPH STICKNEY.

*(District Court, S. D. New York. May 14, 1892.)*

COLLISION—STEAM AND SAIL MEETING—LIGHTS—CHANGE OF COURSE.
A schooner bound east by night in Long Island sound, with the wind about abeam from the southward, came in collision, nearly head on, with a tug bound west. The accounts of the collision as told by those on the respective vessels were wholly irreconcilable. On the evidence as to the courses on which the vessels had previously been sailing, and the angle of collision, as to which both sides substantially agree, and the lights which each vessel must under the circumstances have exhibited to the other, *held*, that the schooner must have made a wrongful change of course to the southward, probably through some mistake in giving or receiving orders, after the tug had reached that side of the schooner's course, and that such change of course caused the collision, and that the tug was not in fault for a change *in extremis.*

In Admiralty. Libel for collision. Dismissed.
*H. D. Hotchkiss* and *Eugene P. Carver*, for libelant.
*McCarthy & Perier* and *Harrington Putnam*, for the Joseph Stickney.

BROWN, District Judge. At about 8 P. M. in the evening of March 22, 1892, the libelant's schooner Harry White, bound eastward in Long Island sound, with the wind about abeam from the southward, came in collision, when about seven miles east-southeast from the Watch Hill beacon, with the steam tug Joseph Stickney, bound west, and soon after sank with her cargo, and became a total loss. The above libel was filed to recover the damages.

The night was overcast, dark, and good for seeing lights; the wind, about south by west. The Stickney had in tow two barges and a brig. The first barge was on a hawser of 100 fathoms; the second barge, astern of the former, was on a hawser of 60 fathoms; and the brig, astern of the latter, was on a hawser of about 60 fathoms. The tug displayed the white vertical lights indicating a tow, besides the usual colored side lights; and the brig also had the usual colored side lights. The tug and schooner were each going through the water at the rate of about five knots per hour.

The evidence for the schooner is to the effect that the white lights of the tug were made about a half hour before collision, some five miles off, and bearing about two points on the port bow of the schooner; that 10 or 15 minutes afterwards the red light was seen on the same bearing, and at the same time the red light of the brig in tow; that the schooner thereupon luffed a quarter of a point so as to make her course east ¾ south, which course she kept until the tug was snug up to her, when the tug blew two short blasts of her whistle; that up to that time the red light had been visible, but not the green light, and that then the tug changed her course so as to show her green light; that the vessels were

then too near to avoid collision; that the schooner thereupon luffed to make the speediest change; and that the tug's stem struck the schooner's port bow, angling a little across the schooner towards her starboard side.

The evidence for the tug is to the effect that the green light of the schooner was seen two or three miles off, 1½ points on the tug's starboard bow; that the tug was then upon a course of west ¾ south, being ¼ of a point more to the southward than the regular course, on account of the southerly wind; that about 10 minutes afterwards the glimmer of a red light was seen in addition to the green light, which was still plainly visible about two points off the starboard bow, estimated to be three quarters of a mile distant; that the tug then blew a signal of two whistles, indicating that they should pass starboard to starboard; that the glimmer of the red light showed about half a minute or less, and then disappeared, leaving the green light alone visible as before; that when at a distance estimated to be about 300 feet, the hull came in view and was noticed to be swinging to the southward; that a signal of two whistles was again given that the schooner might go to port, and that the engines were at the same time stopped; that the schooner did not turn to port, but more to starboard, so that very speedily the green light disappeared, and the red light came in view; whereupon the tug put her helm hard aport, which continued so until collision, the heading of the tug changing some four or five points to the northward; and that the blow of collision was at an angle of about 1½ points, substantially as stated by the libelant's witnesses; that if the schooner had kept her course, she would have passed easily to the northward of the tug and tow; that the tug at no time changed her course to the southward, as the bearing of the schooner continued to broaden somewhat till the vessels were near together, indicating that they would pass each other safely without any starboarding of the tug.

The two versions of the mode in which the vessels approached each other, and of the lights that were seen or visible, are wholly irreconcilable; nor does the story of either side, as it stands, account for the collision. A plot of the navigation will make this clear. Assuming that the previous courses are correctly stated, they varied when the vessels were a mile apart a point and a half from opposite. If, therefore, the schooner's green light was seen 1½ points on the tug's starboard bow, the tug must have then been directly ahead of the schooner and already crossing the line of her course; and the tug, diverging 1½ points, would have been, when the two had come within 300 feet of abreast of each other, over 900 feet to the southward of the schooner; and without some prior change of course, they could not then have come into collision had they tried.

So on the other hand, had the tug's lights been seen when a mile distant *two points* on the schooner's port bow, as the latter's witnesses assert, the schooner when abreast of the tug, both running upon the courses stated, would have been 1,400 feet to the southward of the tug; had they been seen a point and a half on the port bow, they would have been, when abreast, 900 feet distant; if *one* point on the port bow, about 250

feet distant. In either case the schooner would have been always on the tug's port bow; and on that bearing it is very improbable that the tug would have deliberately steered to the left to run down the schooner, if the schooner was going any such considerable distance to the southward; nor in that case could the collision have possibly happened at the angle at which it did happen. Manifestly neither of these accounts can be accepted.

In the contradiction that exists as to the lights visible and the bow over which the lights were seen, the only certain guide that the evidence furnishes is the fact upon which both vessels substantially agree; namely, that at the moment of collision they were nearly head and head, diverging therefrom by a small angle only; and the fact that the tug's stem in striking the port bow of the schooner pointed a little across towards the schooner's starboard side. The pilot of the tug, in placing models to illustrate the position, makes the angle about 1½ points; and the testimony of the schooner's witnesses is not substantially different. As the previous courses of the two diverged a point and a half only, it follows that to maintain the same angle at collision, they must have changed their courses the same amount in opposite directions. All the witnesses agree that the schooner luffed and turned to the southward. It follows that the tug's change must have been to the northward, as her witnesses testify.

The amount of the change of course by either is a matter of dispute. The captain of the schooner estimates his change at only one and a half points; but the pilot of the tug testifies that at collision he was heading northwest ¼ north, which would make his change, and consequently the schooner's change, five points. I doubt the accuracy of the pilot's observation, and think the change probably two points less; an error easily made under the excitement of collision. But whatever be the amount of the change by either, it is manifest that the witnesses for the schooner are mistaken when they say that the tug changed to the southward. The angle of collision proves that her change was to the northward. It proves further, since the schooner had changed to the southward and the tug to the northward, that prior to these changes the tug must have crossed to the southward of the line of the schooner's course; and that fact being established, it follows, as the vessels were moving through the water at about the same speed, that the tug's green light must have been constantly visible to the schooner, and her red light not visible.

The tug's account is credible with a correction of half a point in the estimate of the bearing of the schooner on the tug's starboard bow. The bearing of a point on her starboard bow when a mile distant, instead of a point and a half, fulfills all the conditions of the situation, except that in that position the red light of the schooner ought to have been visible all the time, as well as the green light, supposing that the line of visibility of the green light crossed to port at the common angle of a half a point. The schooner's lights were set in her fore rigging; she was sailing on her starboard tack; and the red light might therefore have been

obscured by her head sails; if obscured at the distance of a mile, the red light would continue to be obscured until shortly before the collision, inasmuch as the schooner's bearing would continue to broaden off slowly upon the tug's starboard bow, as they approached each other.

Such seems to me to be upon the testimony the most probable account of this collision. If the schooner's red light was visible, it is incredible that the persons on the tug who were watching her, who were governing their navigation accordingly, and were giving signals to her, should not have seen it; and if it had been seen, along with the green light, there was no possible motive for the tug to go to the left, rather than to the right. Several witnesses from the tug testify that no red light on the schooner was seen until after her luff shortly before collision. The rest of the account of the tug's witnesses, with the modification suggested of the bearing upon the port bow, accounts naturally for the collision, and the angle at which it actually took place. The schooner's story, on the other hand, is incapable of being made to account for the collision by any reasonable correction of the estimates of her witnesses as to the bearing, or the lights, alleged to have been seen. There was nothing to obscure the colored lights of the tug; and it is impossible that the collision could have occurred in the way it did occur, had not the tug's green light, from the time when it was a mile distant, been visible about half a point on the schooner's port bow, and the tug's red light not visible at all. The schooner's account is in every way not credible, nor consistent with the most certain facts. I find it impossible, therefore, to place any confidence in her version.

Why the schooner should have turned to the southward when the tug had already crossed to that side of her, can only be accounted for by some mistake either in giving or obeying orders. The helmsman has not been called as a witness. Such mistakes are by no means unknown; and the different modes of rigging the helm, and the different practices of foreign seamen, sometimes make such mistakes natural.

Upon the foregoing view of the facts, I must find the collision to have occurred from the fault of the schooner in changing her course. Had she kept her course, the tug would have passed at least 300 feet clear of her to the southward. The line of her course would have met that of the tow 1,000 feet astern; and a change of course a half a point to port would have cleared the whole tow without difficulty.

The signal of two whistles twice given by the tug indicating that she would go to port, did not induce the schooner's change of course, nor influence her in any way. It was designed to induce the schooner to turn to the northward. But the schooner continued her change to southward; and as the tug's signal in no way changed the schooner's action, it is not material whether the tug's change to the northward was consistent with her previous signal or not; and it is, therefore, immaterial. The pilot of the tug, seeing that the schooner persisted in her luff, turned to the northward, because in his judgment he was otherwise likely to be run down. Whether that be so or not, the vessels were then so near each other that any mistake in that respect is not attributa-

ble to the tug as a fault, but, if erroneous, must be borne by the schooner, whose previous fault in changing her course to the southward brought it about.

Libel dismissed, with costs.